# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| |
|---|
| Darlene A. Chapdelaine |
| Plaintiff, |
| v. |
| Mary Duncan et al. |
| Defendants. |

No. 3:14-CV-01581-MPS

## RULING ON PENDING MOTIONS

### I.    INTRODUCTION

On October 24, 2014, Plaintiff Darlene A. Chapdelaine ("Chapdelaine"), initiated this action against several Connecticut state court judges, the Town of Eastford, Connecticut (the "Town"), and a bevy of current and former residents of the Town. In a 68-page complaint (the "Complaint"), Chapdelaine alleges that these defendants conspired with each other and their families and friends to assist Mary Duncan, a former selectwoman of the Town, to breach a contractual relationship with Chapdelaine, to benefit others in the Town, to harass, intimidate, harm, and slander Chapdelaine, to invade her privacy, and to interfere with her businesses. Chapdelaine further alleges that the state court judges violated her constitutional rights by issuing rulings that were adverse to her. Count One alleges that the state court violated her due process and property rights under 42 U.S.C. § 1983 by, among other things, allowing cases to move forward other than in the order filed. Count Two alleges that all defendants violated her rights under the First Amendment. Count Three "alleges that those acting under the color of the law have been unjustly enriched by compensation or other for their interference, obstruction, and other abusive behaviors, [and] unlawful actions" against her in violation of the Fifth

1

Amendment. Count Four alleges violation of Chapdelaine's "Right of to [sic] Acquisition, Enjoyment, Disposal of Property" as to all defendants. (Compl., ECF No. 1-1 at 57.) Count Five alleges that the Town, its officials, the State of Connecticut and its officials have "imposed setbacks, restrictions, and injunctions on [her] property," which have rendered it "invaluable."[1] (*Id.* at 58, ¶ 194.) Chapdelaine alleges that her property is "encumbered in a permanent wetlands injunction requested by the Town of Eastford, enforced by the State of Connecticut Judicial System, and fabricated by Mary Duncan, John Revill, the Town of Eastford and its officials." (*Id.*) Count Six alleges that "Mary Duncan, John Revill, and those acting under the color of the law have trespassed onto the property owned by the plaintiff without notice or cause." (*Id.* at 59, ¶ 197.) Counts Seven and Eight are titled equitable estoppel and promissory estoppel, respectively. (*Id.* at 59-60, ¶¶ 198-99.) Count Nine claims malicious prosecution, alleging that "defendant[s] Denis Day, Christopher Whitehouse, Robert Torcellini, Thomas DeJohn, [and] Mary Duncan with the assistance of and those acting under the color of the law have made false complaints to Federal and State Governmental Agencies." (*Id.* at 60, ¶ 201.)

Chapdelaine has filed a motion to proceed *in forma pauperis* (ECF No. 2). Based on the information Chapdelaine submitted in her financial affidavit attached to her *in forma pauperis* motion, the Court is persuaded that she is unable to pay the costs and fees associated with this lawsuit and therefore GRANTS her motion to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1). In deciding whether to grant such a motion, the Court must also evaluate Chapdelaine's pleading and dismiss the case if it fails to state a claim on which relief may be granted. *Id.* § 1915(e)(2)(B)(i)-(iii) ("[T]he court shall dismiss [a] case at any time if the court determines that [the action] is frivolous or malicious; fails to state a claim on which relief may be

---

[1] The Plaintiff seems to mean "without value."

granted; or seeks monetary relief against a defendant who is immune from such relief."); *see also Livingston v. Adirondack Bev. Co*., 141 F.3d 434, 437 (2d Cir. 1998) (noting that Congress mandated dismissal of an *in forma pauperis* action that fails to state a claim). Because the Complaint fails to state any claim on which relief may be granted as to all defendants, it is DISMISSED. The Court, however, grants Chapdelaine leave to replead her claims, provided that she plead, consistent with Rule 11 of the Federal Rules of Civil Procedure, specific facts showing that there are plausible, timely causes of action as to any defendants except the judicial defendants, who are plainly immune from this lawsuit. Because the Complaint is dismissed, Chapdelaine's Ex Parte Motion for Ex Parte Temporary Restraining Order and/or Order of Protection under Rule 65 and Preliminary Injunction (ECF No. 6) and her Motion for Stay of State Court Action Injunction and Protective Order Pending the Outcome of this Case (ECF No. 10) are DENIED as moot.

## II.   FACTUAL ALLEGATIONS

Chapdelaine lists the following Defendants in the Complaint: Mary Duncan, John Revill, the Town Of Eastford (the "Town"), the Town Of Eastford Inland Wetlands & Watercourse Commission (the "IWWC"), Robert Torcellini, Deborah Torcellini, Paul Torcellini, Julia Torcellini, Craig Whitehouse, Rebecca Whitehouse, Christopher Whitehouse, Raymond Whitehouse, Amy Whitehouse, Deborah Lee, Claudia Hixson, Denis Day, Marcia Day, Karen Butts, Georgianne Copley, Brenda Willis, Robert Willis, Daniel Belanger, Rhonda Belanger, Cecelia Vaida, Paul Vaida, Evelyn Green, Kenneth Andersen, Thomas DeJohn, Caroline Tarca, Arthur Brodeur, Allan[2] Platt, Adrian Genovesio, Diana Drake, the Honorable Angelo dos Santos,

---

[2] This name is spelled at various times as "Allan" and "Alan" in the Complaint.

the Honorable John Boland, the Honorable Michael Riley, and the Honorable Harry Calmar[3] (together, the "Defendants").

Chapdelaine alleges that, with her domestic partner at the time, Gary Warren ("Warren"), she purchased a home from Mary Duncan ("Duncan") and John Revill ("Revill") under a Bond for Deed Real Estate Agreement (the "Agreement"). (Compl. at 10.) The parties recorded the Agreement in the land records on October 19, 2010. (*Id.*) Chapdelaine alleges that she currently resides on this property, which is located at 211 Eastford Road in Eastford, Connecticut. (*Id.* at 3, ¶ 1.) Chapdelaine and Warren obtained a building permit on October 12, 2010, and began constructing a barn on the property. They moved into the home on November 16, 2010. (*Id.* at 11.) On November 29, 2010, Chapdelaine applied to the IWWC for a "jurisdictional ruling," and a hearing was held on December 16, 2010. (*Id.*) The IWWC granted the agricultural exemptions of defendant Robert Torcellini on December 16, 2010, but tabled Chapdelaine's application until January 27, 2011. (*Id.*) On that date, the IWWC approved some of Chapdelaine's proposed agricultural activities, but denied others. (*Id.* at 12.) Chapdelaine alleges that the only reason certain of her agricultural activities were denied approval was because "they were in direct conflict and competition with Mr. Robert Torcellini, Mr. Craig Whitehouse, Ms. Deborah Lee, their family members and known associates." (*Id.*) Chapdelaine also alleges that the IWWC granted Robert Torcellini's application for agricultural exemptions for a "nursery, greenhouse operation." (*Id.* at 12-13.) On June 13, 2011, the IWWC initiated an enforcement action against Chapdelaine. (*Id.* at 25, ¶ 61.)

---

[3] Defendants Kenneth Anderson, Thomas DeJohn, Caroline Tarca, and the Honorable Harry Calmar are not listed in the case caption, but are described as parties in the Complaint. (Compl. at 5, ¶ 24.)

4

Since 2011, Chapdelaine has been engaged in legal disputes with various defendants concerning the 211 Eastford Road property. (*Id.* at 63-67.) Adrian Genovesio, the son of a state judicial employee, Diana Drake, created a website called "isupportmaryduncan.com" that provides information about the court cases involving Duncan and Chapdelaine. (*Id.* at 32, ¶ 106-7.) Several of the defendants have placed signs in their yards that display variations of the text, "I Support Mary Duncan." (*Id.* at 18.) Chapdelaine seeks "monetary damages in excess of $500,000.00," for loss of revenue in her businesses, and compensation for pain and suffering. She also seeks "injunctive relief to stop the continued violations of [her] constitutionally protected rights." (*Id.* at 67.) Additional facts are set forth below.

## III.    LEGAL REVIEW

"[W]hen [a] plaintiff proceeds *pro se,* . . . a court is obliged to construe [her] pleadings liberally." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (internal citations omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Nevertheless, even a *pro se* plaintiff must meet the pleading standard under the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (*quoting Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## IV.    DISCUSSION

### A.  Count One: 42 U.S.C. § 1983 Action

To the extent that Chapdelaine brings claims under 42 U.S.C. § 1983 ("Section 1983") against the Defendants, alleging that they conspired with each other to violate her federal rights, the judicial defendants are dismissed because they are absolutely immune from suit, the Town is dismissed because Chapdelaine has failed to allege an unconstitutional policy or custom, the IWWC is dismissed because it cannot be sued under Section 1983, the individual IWWC members and selectmen are dismissed because Chapdelaine has failed to allege sufficient facts to state a claim on which relief can be granted, and the private defendants are dismissed because Chapdelaine has failed to allege facts sufficient to state a claim that any of them deprived her of a federal right, acted under color of state law, or conspired with a state actor to inflict an unconstitutional injury on her.

#### 1.   Judicial Defendants

The Defendants in this case include four Connecticut state court judges: the Honorable Harry Calmar ("Judge Calmar"), the Honorable Angelo dos Santos ("Judge dos Santos"), the Honorable John Boland ("Judge Boland"), and the Honorable Michael Riley ("Judge Riley"). Chapdelaine alleges that these judges, "through their rulings . . . violated and deprived [her] of [her] Constitutional rights." (Compl. at 20, ¶ 37.) Specifically, Chapdelaine alleges that several judges "failed to determine motions in the order filed" (*Id.* ¶ 39); Judge Boland and Judge dos Santos failed to disclose their relationships with parties in the cases (*Id.* ¶¶ 39, 111, 112); Judge Boland and Judge dos Santos allowed cases "to proceed in the improper venue, without proper

notice, service, or other" (*Id.* ¶¶ 38, 111, 112); and Judge dos Santos, through his rulings, deprived Chapdelaine of her property rights, including taking of her land without compensation and denying her motions to obtain counsel. (*Id.* at 34-35, ¶ 112.) Judge Riley allegedly denied Chapdelaine "fee waivers," despite the fact that she provided proof of her indigent status (*Id.* ¶¶ 40, 113), and Judge Calmar allegedly violated Chapdelaine's due process rights when he stayed certain state court proceedings. (*Id.* at 36, ¶ 114.)

Chapdelaine's claims against these judges must be dismissed because judges are absolutely immune from suit for their judicial actions. "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (internal citations omitted). Further "'[i]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" *Id.* (*quoting* 42 U.S.C. § 1983). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (internal quotation marks and citations omitted); *Pett v. Crandall*, No. 6:14-CV-682 GLS/ATB, 2014 WL 3105821, at *3 (N.D.N.Y. July 7, 2014) ("[E]ven if the judge acted maliciously, corruptly, or with a conflict of interest, this would be insufficient to overcome judicial immunity.").

In order to determine whether a judge's actions are "judicial," the court must examine "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump,* 435 U.S. at 362. Chapdelaine's complaint plainly challenges judicial actions, including

ruling on motions, allowing cases to proceed, staying cases, granting or denying fee waivers, and granting or denying motions to appoint counsel. *Huminski v. Corsones*, 396 F.3d 53, 76 (2d Cir. 2005) ("A court's control of its docket is also a judicial act because it is part of [a court's] function of resolving disputes between parties.") (internal quotation marks and citations omitted). Chapdelaine does not allege facts that suggest that the four judges acted in the "clear absence of all jurisdiction." Because the Complaint targets actions taken by the four judges in their judicial capacities, they have absolute immunity.

Further, to the extent that Chapdelaine is requesting that this Court review final state court judgments, this court lacks jurisdiction to do so under the *Rooker-Feldman* doctrine. The *Rooker–Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

> Before a court may apply the *Rooker-Feldman* doctrine, four requirements must be met:
>
> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (alterations in original) (internal citations and quotation marks omitted).

In Count One, Chapdelaine states that she "has attempted to seek protection for herself and her property . . . in the state court however the state court has violated her due process and property rights." (Compl. at 52-53.) As examples, she cites the following state court cases, of which the Court takes judicial notice: (1) WWM-CV11-6003791 (the "enforcement action"),

which was consolidated with HHD-CV11-5036225S, and in which the Connecticut Appellate Court ultimately affirmed both (a) the denial of Chapdelaine's request for a declaratory judgment that the IWWC lacked jurisdiction over her activities and (b) the determination that Chapdelaine conducted activities in violation of Conn. Gen. Stat. 22a-44(b) (*see Yorgensen v. Chapdelaine*, 150 Conn. App. 1, 3 (2014)); (2) WWM-CV11-5005683, which ended in judgment of dismissal on April 20, 2011; and (3) WWM-CV14-5005837-S, which ended in a judgment of nonsuit on January 5, 2015. The Connecticut Supreme Court denied Chapdelaine's petition for certification to appeal *Yorgensen v. Chapdelaine* on September 18, 2014. In all of these cases, except WWM-CV14-5005837-S, the state court judgment was rendered before Chapdelaine brought her complaint in this court on October 24, 2014. To the extent that Chapdelaine lost these cases in state court, complains of injuries caused by the state court judgments, and seeks review of those judgments by this Court, this Court lacks subject matter jurisdiction to hear such claims under the *Rooker-Feldman* doctrine.

For all of these reasons, Chapdelaine's claims against the four judges are dismissed.

## 2. Municipal Defendants

Chapdelaine alleges that all of the Defendants have discriminated against her by selectively enforcing local regulations against her (Compl at 47, ¶ 165), and that they "have engaged in a pattern of conduct that is abusive in nature and against both federal and state law." (*Id.* at 50, ¶ 178.)

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (internal quotation marks and citations omitted). "Section 1983 itself creates no substantive rights; it

9

provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

### a. IWWC Members

Chapdelaine sued IWWC members Robert Torcellini (also the Second Selectman of the Town), Craig Whitehouse, Deborah Lee, Daniel Belanger, and Thomas DeJohn. Chapdelaine alleges that Robert Torcellini, who operates a nursery in Eastford, "tortuously [sic] interfered with all aspects of [her] life since [her] relocation [to the property]." (*Id.* at 29, ¶ 92.) Chapdelaine alleges that Robert Torcellini applied for, and was granted, agricultural exemptions for a "nursery, greenhouse operation" at around the same time that the IWWC denied certain of her agricultural activities. (*Id.* at 12-13.) Chapdelaine alleges that both she and Robert Torcellini were on the IWWC agenda for "Agricultural Exemptions" on December 16, 2010. While Mr. Torcellini's agricultural exemptions were granted that night, Chapdelaine's exemptions "were tabled until January 27, 2011." (*Id.* at 11.) The IWWC ultimately granted some of Chapdelaine's agricultural activities and denied others on January 27, 2011. Chapdelaine alleges that these IWWC members denied approval of her agricultural activities because they believed that her activities would compete with their own agricultural activities, or those of their friends and family members. (*Id.* at 12-14.)

### i. Timeliness

The allegations against the IWWC members are time-barred. "[A] complaint may be dismissed as frivolous [under 28 U.S.C. § 1915(e)(2)(B)(i)] prior to service where it is clear from the face of the complaint that the claim is time-barred under the applicable statute of limitations." *Smith v. New York City Transit Auth. (NYCTA)*, 201 F.3d 432 (2d Cir. 1999) (*citing Pino v. Ryan*, 49 F.3d 51, 52 (2d Cir. 1995)).

"When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." *Walker v. Jastremski,* 159 F.3d 117, 119 (2d Cir.1998). "Under federal law, a cause of action generally accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal citations and quotation marks omitted). Chapdelaine alleges that the IWWC members denied approval of certain of her agricultural activities on January 27, 2011, and that the IWWC initiated enforcement action against her on June 13, 2011. Chapdelaine does not sufficiently allege facts indicating continuous or ongoing violations of her constitutional rights, or any other basis for tolling. *See Pino,* 49 F.3d at 54. Chapdelaine filed the Complaint on October 24, 2014, more than three years after the alleged unconstitutional conduct. Thus, her claims against the IWWC members are time-barred and must be dismissed.

ii.     *Selective Enforcement Equal Protection Claims*

Even if Chapdelaine's claims against the IWWC members were not time-barred, they still fail to state a claim upon which relief can be granted. Chapdelaine alleges that the IWWC members violated the Equal Protection clause of the Fourteenth Amendment, which "requires that the government treat all similarly situated people alike." *Harlen Associates v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Specifically, Chapdelaine contends that the IWWC defendants intended to treat her differently from Robert Torcellini by granting approvals for his

agricultural activities and denying approvals for her agricultural activities. "A plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or 'class[-]of[-] one.'" *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011) (*citing Cobb v. Pozzi,* 363 F.3d 89, 109–10 (2d Cir.2004)).

To state a claim for selective enforcement, Chapdelaine must allege facts showing "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (internal quotation marks and citations omitted). A plaintiff successfully brings a "class-of-one" claim when she "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010). Chapdelaine, however, claims that "defendants have discriminated against and selectively enforced local regulations" against her with a malicious or bad faith intent to injure her because her businesses competed with those of Defendants and their friends and family members. (Compl. at 47 ¶ 165.) Thus, she appears to allege only selective enforcement, and not a class-of-one claim.

"Courts in the Second Circuit are split as to whether the 'extremely high degree of similarity' standard articulated for class-of-one claims also applies to selective enforcement claims." *Musco Propane, LLP v. Town of Wolcott,* 891 F.Supp.2d 261, 274 (D.Conn.2012), *aff'd sub nom. Musco Propane, LLP v. Town of Wolcott Planning & Zoning Comm'n,* 536 F. App'x 35 (2d Cir.2013). Many district "courts have applied a slightly less stringent similarly situated standard in the selective enforcement context," than in the class-of-one context. *Mosdos Chofetz*

*Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011) ("*Mosdos II*"). This lower standard requires "plaintiffs to show that plaintiff and comparators were similarly situated in all material respects, or that a prudent person, looking objectively at the incidents, would think them roughly equivalent." *Missere,* 826 F. Supp. 2d at 561 (internal citations and quotation marks omitted). "Exact correlation is neither likely nor necessary, but the cases must be fair congeners . . . [a]pples should be compared to apples." *Wood v. Town of E. Hampton*, No. CIV.A. 08-CV-4197, 2010 WL 3924847, at *20 (E.D.N.Y. Sept. 30, 2010) (internal citations and quotation marks omitted).

"Under *Iqbal,* factual allegations must be sufficient to support necessary legal conclusions." *Ruston,* 610 F.3d at 59. At the motion to dismiss stage, "a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Mosdos II*, 815 F. Supp. 2d at 698. "Thus, [w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Id.* (internal quotation marks and citations omitted).

Without more facts about which of her activities were denied or approved, and which of Robert Torcellini's activities were approved, Chapdelaine fails to state a claim of selective enforcement. The Complaint suggests that both Chapdelaine and Robert Torcellini were planning to build a nursery and greenhouse, but unlike Robert Torcellini, Chapdelaine also alleges that she was planning to build landscaping and equestrian businesses. (Compl. at 14-15.) Chapdelaine has failed to allege facts indicating that Robert Torcellini's proposed agricultural exemptions were similar in size and scope to hers. *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F.

Supp. 2d 568, 604 (S.D.N.Y. 2010) ("*Mosdos I*") (finding that plaintiffs failed to allege similarly situated comparators when the complaint lacked allegations "that the other developments were similar in size or scope to the proposed development"). Thus, based on the allegations in Chapdelaine's complaint that she and Robert Torcellini both applied for agricultural exemptions at around the same time, and some of hers were denied while all of his were granted, it is not "plausible that a prudent person could decide that these projects were similar in material respects . . . and that they were roughly equivalent." *Mosdos II*, 815 F. Supp. 2d at 699. Moreover, Chapdelaine has not identified any other similarly situated comparator besides Robert Torcellini. Thus, Chapdelaine has failed to state a claim that the IWWC defendants violated the Equal Protection clause of the Fourteenth Amendment.

### iii. Other Claims Against IWWC Defendants

Chapdelaine also alleges that Craig Whitehouse has "assisted with . . . the strategic placement of signs that say 'isupportmaryduncan.com' and 'isupportmaryduncan' solely for the purpose and intent to harass, cause pain, and suffering," has "interfered with [her] quiet enjoyment and life," "has participated in Bankruptcy Fraud," "has violated Environmental Laws," "has violated . . . wetlands regulations," and has "tortuously [sic] interfered with [Chapdelaine's] private and professional life." (*Id.* 28-29, ¶¶ 84-89.) She alleges that Daniel Belanger and his wife have eleven signs that say "I Support Mary Duncan" pointed at Chapdelaine's property (*Id.* p. 18), and that they have conspired to invade her privacy by placing cameras and video recording devices pointed at her property. (*Id.* at 44,¶ 141.) Finally, Chapdelaine alleges that Thomas DeJohn and Robert Torcellini "made false complaints to Federal and State Governmental Agencies." (*Id.* at 60, ¶ 201.) These conclusory statements fail to state a claim for violations of federal laws or rights. Merely reciting the labels of federal

statutes does not meet the pleading requirements described above. Thus, Count One is dismissed as to Robert Torcellini, Craig Whitehouse, Deborah Lee, Daniel Belanger, and Thomas DeJohn.

### b.  The Town

For the reasons set forth above, Chapdelaine's claims against the Town are time-barred, but even if they were not, Chapdelaine has failed to allege facts that suggest that a Town custom or policy caused violations of her federally-protected rights. Municipalities may be sued under Section 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "To show municipal policy by referring to only a single act, that act must have been committed by a city official 'responsible for establishing final policy with respect to the subject matter in question,' and must represent a deliberate and considered choice among competing alternatives." *Hall v. Town of Brighton*, No. 13-CV-6155T, 2014 WL 340106, at *5 (W.D.N.Y. Jan. 30, 2014) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Thus, Chapdelaine's complaint lacks "factual allegations demonstrating the existence of an officially-adopted policy or custom that caused [Plaintiff] injury and a direct and deliberate causal connection between that policy or custom and the violation of [Plaintiff's] federally protected rights." *Joe v. Moe*, No. 10 CIV. 4417 RJS, 2011 WL 2416882, at *5 (S.D.N.Y. June 1, 2011) (internal citations and quotation marks omitted). Thus, the Court dismisses Chapdelaine's Section 1983 claims against the Town.

### c.  The IWWC

Municipalities are creatures of state statutes, *Baker v. City of Norwalk*, 152 Conn. 312, 314 (1965), and "can exercise only such powers as are expressly granted to [them]." Although

municipalities have the power to sue and be sued, *see* Conn. Gen. Stat. § 7–148(c)(1)(A), not "all municipal subdivisions are legal entities separate from the municipality itself." *Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 256 (D. Conn. 2012). "[T]he legislature has explicitly granted such independent legal status only to certain specific departments. Courts have found the absence of a specific enabling statute to be dispositive in determining that a municipal body is not a distinct body politic." *Id.* (internal citations omitted). The Connecticut statutes that authorize each municipality to establish a commission to regulate its wetlands do "not explicitly declare such inland wetlands agencies to be 'bodies politic' or capable of suing and being sued." *Id. See* Inland Wetlands and Watercourses Act, Conn. Gen. Stat. §§ 22a–36-22a–45. This Court agrees with the Court in *Watrous*, which determined that an IWWC is not an independent legal entity that is capable of being sued. *See, e.g., Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) ("A municipal police department is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function. Because a municipal police department is not an independent legal entity, it is not subject to suit under section 1983.").

Accordingly, the Court dismisses all claims against the IWWC.

### d.  First Selectmen

Chapdelaine's only allegations against Arthur Brodeur ("Brodeur")—whom she calls "the chief law enforcement officer for the Town," but who appears to be Town's First Selectman (*see* Town of Eastford, Boards and Committees, Board of Selectmen Home Page, http://www.eastfordct.org/TownofEastford.cfm?subpage=1771208 (last visited May 13, 2015))[4]

---

[4] "Courts routinely take judicial notice of data on government websites because it is presumed authentic and reliable." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, No. 07 CIV. 10470, 2013 WL 6869410, at \*4 (S.D.N.Y. Dec. 30, 2013).

—are that he "failed to properly, adequately, protect [her] . . . causing [her] to be subjected to harm, pain, [and] slanderous statements, [and] he has assisted with [her] alienation . . . from [her] community by his not properly protecting [her and by] supporting the acts of those bullying and harassing [her] daily." (Compl. at 28, ¶ 83.) These statements, without more, are insufficient to state a claim under Section 1983 that Brodeur deprived Chapdelaine of a federal right. *See Iqbal*, 556 U.S. at 678 ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the claims against Brodeur are dismissed.

Chapdelaine's only allegations against Allan Platt ("Platt"), a former first selectman of the Town, are that he, "failed to properly, equally, protect" her, her family, and her farm; discriminated against her, caused her harm, pain, and suffering; slandered her, harassed her, alienated her from her community, "interfered with [her] quiet enjoyment of [her] property and life," and "verbally attacked [her]." (Compl. at 27-28, ¶¶ 81-82.) These conclusory statements, without more, are insufficient to state a claim under Section 1983 that Platt deprived Chapdelaine of a federal right. *See Iqbal*, 556 U.S. at 678. Thus, such claims against Platt are dismissed.

### 3.   Private Defendants[5]

Chapdelaine fails to allege that any private defendant deprived her of a federal right or acted under color of state law. "[A] private actor acts under color of state law when the private

---

[5] There are no allegations in the Complaint against the following private defendants: Deborah Torcellini, Julia Torcellini, Raymond Whitehouse, Amy Whitehouse, Marcia Day, Karen Butts, Georgianne Copley, Cecilia Vaida, Paul Vaida, Evelyn Green, and Kenneth Anderson. Therefore, these defendants are dismissed.

actor is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citations and internal quotation marks omitted). Chapdelaine also fails to allege a conspiracy under Section 1983 because she fails to allege facts showing "(1) an agreement . . . between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn*, 200 F.3d at 72. "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello,* 292 F.3d at 324.

### a.  Mary Duncan and John Revill

Chapdelaine alleges that Duncan and Revill "breach[ed] their contractual relationship" with her and Warren (Compl. at 42, ¶¶ 126-28); "misrepresented the property" (*Id.* ¶¶ 53, 130, 136); "interfered with the permitting process" for the property (*Id.* at 24, ¶ 54); "slandered [her] internationally through a website known as 'isupportmaryduncan.com,'" which placed her in a false light (*Id.* ¶ 55); "released confidential financial information surrounding the mortgage real estate agreement to the public without prior written approval" (*Id*. ¶ 56); "interfered with [her] business activities" (*Id*. ¶ 57); "interfered with the relationship . . . between . . . Chapdelaine and her parents" (*Id*. ¶ 58); "caus[ed] the irretrievable breakdown of the relationship between Gary Warren and Darlene Chapdelaine" (*Id*. at 25, ¶ 59); "caused Chapdelaine to suffer the lack of enjoyment of her private and professional life" (*Id*. ¶ 60); and "breached the contractual agreement by not producing the required documents to effectuate the agreement." (*Id*. at 42, ¶ 126). None of these allegations involve any deprivation of federal rights. Duncan and Revill are private citizens, and besides conclusory statements, Chapdelaine has not alleged facts from

which the Court could infer that an agreement existed between them and state actors to act in concert to deprive her of federal rights.

In addition, Chapdelaine states that Duncan and Revill violated the Mortgage Foreclosure Protection Act, the Truth in Lending Act, the Mortgage Disclosure Improvement Act, the Real Estate Settlement Procedures Act, the Homeowners' Protection Act, Equal Credit Opportunity Act, Fair Credit Reporting Act, Fair and Accurate Credit Transactions Act, the Home Ownership Equity Act. (*Id.* ¶¶ 116-124). Chapdelaine has not alleged any specific facts suggesting a violation of any such laws. *Iqbal*, 556 U.S.at 678 ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (*quoting Twombly*, 550 U.S. at 570).

### b.  Other Private Defendants

Chapdelaine alleges that "Paul Torcellini purchased two properties in close proximity" to Chapdelaine's property shortly before she purchased it. (Compl. at 15.) Rebecca Whitehouse allegedly "post[ed] harassing signs" on her property "for the sole purpose of harassing and causing harm to" Chapdelaine. (*Id.* at 29, ¶ 90.) Christopher Whitehouse and Denis Day allegedly "made false complaints to Federal and State Governmental Agencies." (*Id.* at 60, ¶ 201.) Claudia Hixon allegedly wrote a sarcastic and harassing letter to Chapdelaine in 2014 regarding the yard signs. (*Id.* at 16.) Robert Willis and Brenda Willis are Chapdelaine's neighbors and have allegedly posted signs that say "isupportmaryduncan" on their property "with intent to cause pain, harm, and suffering." (*Id.* at 30, ¶ 97.) Daniel Belanger and Rhonda Belanger have eleven such signs pointed at Chapdelaine's property. (*Id.* p. 18.) Chapdelaine also

19

alleges that the Belanger family has "conspired with other codefendants to invade" her privacy by pointing cameras and video recording devices at Chapdelaine's property. (*Id.* at 44, ¶ 141.) Caroline Tarca allegedly conspired with Thomas DeJohn to place Chapdelaine "in the false light of the public, and has participated in events and fundraisers supporting Mary Duncan that have been held on" public property. (*Id.* at 30, ¶ 99.) Finally, Chapdelaine alleges that Adrian Genovesio created the website, "isupportmaryduncan.com," which places Chapdelaine in a false light, slanders her, and interferes with her business. (*Id.* at 32, ¶ 106.) There are no allegations that these private defendants were acting under color of state law or that they deprived Chapdelaine of any federal right. Therefore, any claims against the remaining private defendants are dismissed.

### B.  Count Two: Violation of the First Amendment[6]

Chapdelaine "alleges that all the defendants have violated [her] first amendment protection rights including the state lower court with their lack of action, lack of protection, violation of [her] due process rights, property rights, and other, which include . . . invasions of life, property, and the pursuit of happiness . . . afforded under the Constitution." (*Id.* at 51, ¶ 180.) Specifically, under Count Two (Violation of First Amendment Protection), Chapdelaine alleges that she "cannot get away from the yard signs, the billboards and the internet website known as 'isupportmaryduncan.com.'" She alleges that "Mary Duncan[,] conspiring with co-defendants[,] has turned [her] private life into a circus, and placed [her] in the false light of the WORLD via the internet based web site known as 'isupportmaryduncan.com.'" (*Id.* at 56, ¶ 187.) Chapdelaine alleges that she "has been irreparably harmed, financially devastated, and

---

[6] Counts Two, Three, and Five should be brought under Section 1983, and the Court has already addressed Chapdelaine's Section 1983 claims. Therefore, the following two sections address additional flaws with respect to these counts.

physically assaulted as a result of the actions of the defendants . . . ." (*Id.* ¶ 188.) These allegations do not state a claim for violation of the First Amendment as to any defendant, and this count is dismissed.

### C.  Counts Three and Five: Taking of Property without Just Compensation

Chapdelaine alleges that the Town "and its past and present officials have . . . tak[en] [her] property with their overly burdensome restrictions . . . [and] with their enforcement action." (Compl. at 38-39, ¶ 115.) Chapdelaine alleges that the Town, its officials, the State of Connecticut, and its officials "have imposed setbacks, restrictions, and injunctions on the property known as 211 Eastford Road[,] which have rendered the property invaluable.[7] The house is 100% encumbered in a permanent wetlands injunction requested by the Town of Eastford . . ." (*Id.* at 58, ¶ 194.) She further alleges that Town officials have "falsified documents" and "have abused their official positions by using them to torture, harass, steal, and interfere with [her] private enjoyment, life, and businesses." (*Id.* at 38-39, ¶ 115.) Finally, Chapdelaine alleges that the Defendants have conspired with each other to prevent her from obtaining financing, therefore "taking my land without compensation." (*Id.* at 44, ¶ 146.)

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Komondy v. Gioco*, No. 3:12-CV-250 CSH, 2014 WL 6453892, at *5 (D. Conn. Nov. 18, 2014) (*quoting Palazzolo v. Rhode Island,* 533 U.S. 606, 617 (2001)). "To establish a takings claim under 42 U.S.C. § 1983, [Chapdelaine] must show (1) a property interest; (2) that has been taken under the color of state law; (3) without just compensation." *HBP Associates v. Marsh*, 893 F. Supp. 271, 277 (S.D.N.Y. 1995). "In addition, in order for

---

[7] The Plaintiff seems to mean "without value."

21

liability to attach to a municipality, such as the County, a plaintiff must show that it was an official policy or custom or practice that proximately caused the constitutional violation." *Id.* "A landowner 'has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State.'" *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379 (2d Cir. 1995) (*quoting Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)). "Thus, to withstand a motion to dismiss, an aggrieved plaintiff must allege, not only a taking, but that compensation was sought via state procedures and was denied." *New Holland Vill. Condo. v. DeStaso Enterprises Ltd.*, 139 F. Supp. 2d 499, 504 (S.D.N.Y. 2001). "[T]he Second Circuit, and hence this District, have explicitly approved Connecticut's constitutional procedure for property owners to obtain just compensation for a taking." *Komondy*, 2014 WL 6453892, at *7. The Connecticut Constitution's takings clause, which states that "[t]he property of no person shall be taken for public use, without just compensation therefor," Conn. Const. Art. 1, § 11, "may be used as the basis of an inverse condemnation action to recover compensation for property taken from private individuals, even in the absence of a separate statutory remedy." *Villager Pond, Inc.,* 56 F.3d at 380. Thus, Chapdelaine "is required to look to the state for compensation before [her] takings claim will lie." *Id.*

The Complaint, however, does not allege that Chapdelaine sought and was denied just compensation in a state court proceeding under the Connecticut Constitution. Thus, her claim for the regulatory taking of her property without just compensation is not ripe, and it is dismissed. *See Id.* ("So long as a remedy potentially is available under the state constitution's provision, [Plaintiff] has not yet met the preconditions for a valid takings claim."); *Komondy*, 2014 WL 6453892, at *7 (claim is not ripe because "[p]laintiff has failed to plead any facts upon which

this Court could infer that he unsuccessfully utilized Connecticut's available state procedures, under Article I, Section 11 of the Connecticut Constitution, to procure just compensation for the alleged taking").

### D.  Count Nine: Malicious Prosecution

Chapdelaine alleges that defendants Denis Day, Christopher Whitehouse, Robert Torcellini, Thomas DeJohn, and Mary Duncan, "with the assistance of [] those acting under the color of the law have made false complaints to Federal and State Governmental Agencies," including the "State of Connecticut (Judicial Branch through infractions and civil enforcement action)," U.S. Army Corps of Engineers, the Connecticut Department of Energy and Environmental Protection, the Connecticut Department of Agriculture, the Connecticut Department of Social Services, the Connecticut Department of Transportation, and the Connecticut state police. (Compl. at 60-61, ¶ 201.)

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (internal quotation marks and citations omitted). "To prevail on a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements: (1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) 'the defendant acted without probable cause'; and (4) 'the defendant acted with malice.'" *Id.* (*quoting McHale v. W.B.S. Corp.*, 187 Conn. 444, 446 (1982)). Chapdelaine fails to allege sufficient facts to state such a claim for malicious prosecution under state law as to any of the defendants. In particular, she has

failed to allege that any criminal proceedings were brought against her. This claim is therefore dismissed.

### E.  Counts Four, Six, Seven, and Eight: Other State Law Claims

"Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case." *Nicholson*, 356 F. Supp. 2d at 165-66. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 715–26 (1966). The Court declines to exercise supplemental jurisdiction over Chapdelaine's remaining state-law claims, including breach of contract, interference with contract, cyber bullying, invasion of privacy, harassment, slander, false light invasion of privacy, conversion, violation of rights to quiet enjoyment, acquisition, and disposal of property (Count Four), trespass (Count Six), equitable estoppel (Count Seven), promissory estoppel (Count Eight). Moreover, even if the Court were to exercise supplemental jurisdiction over the remaining state-law claims, it would dismiss many of these counts for failure to state a claim on which relief can be granted. Several counts are not valid legal claims and the the Complaint does not allege sufficient facts to support causes of action. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## V. CONCLUSION

For the foregoing reasons, Plaintiff's application for leave to proceed *in forma pauperis* is granted, but the complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), and the Clerk is directed to close this case. While it is not clear that the Plaintiff has a good faith basis to plead timely, plausible causes of action against any defendants, the Court will allow her to file, within 30 days, a motion to reopen together with a proposed amended complaint that addresses the deficiencies discussed in this ruling. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d

Cir. 1999). If Chapdelaine files an amended complaint, it must be retyped or rewritten in its entirety and may not incorporate any portion of the original complaint by reference. It must also plead specific facts as to each defendant Chapdelaine contends is liable and must comply with Rule 11 of the Federal Rules of Civil Procedure. The Court grants Chapdelaine leave to replead her claims as to all defendants except the judicial defendants.

Because the Complaint is dismissed, Chapdelaine's Ex Parte Motion for Ex Parte Temporary Restraining Order and/or Order of Protection under Rule 65 and Preliminary Injunction (ECF No. 6) and her Motion for Stay of State Court Action Injunction and Protective Order Pending the Outcome of this Case (ECF No. 10) are DENIED as moot.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                May 20, 2015